**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
NORTHEASTERN DIVISION**

| | |
|---|---|
| **CRAIG S. JONES,** | ) |
| | ) |
| **Plaintiff,** | ) |
| | ) |
| v. | ) **Case No.: 5:08-CV-166-VEH** |
| | ) |
| **MICHAEL J. ASTRUE,** | ) |
| **Commissioner,** | ) |
| **Social Security Administration** | ) |
| | ) |
| **Defendant.** | ) |

## <u>MEMORANDUM OPINION</u>

### I.   INTRODUCTION

The plaintiff, Craig S. Jones ("Jones") appeals from the decision of the Commissioner of the Social Security Administration ("Commissioner") denying his application for a period of disability and Disability Insurance Benefits ("DIB"). Jones has timely pursued and exhausted his administrative remedies, and the decision of the Commissioner is ripe for review pursuant.

The court has reviewed the entire record in this case and is of the opinion that the Commissioner applied the correct legal standards, and that the decision is supported by substantial evidence.  Accordingly, the Commissioner's decision is due

to be **AFFIRMED**.

## II. FACTUAL HISTORY

Jones applied for a period of disability and disability insurance benefits on February 22, 2005. (TR 20). He alleged onset of disability beginning June 3, 2004. (TR 20). The claim was denied on July 1, 2005, and Jones requested a hearing, which was granted. (TR 20). Following a hearing, the administrative law judge (ALJ) issued an unfavorable decision, finding that Jones was not disabled. (TR 28). Jones now seeks judicial review of this unfavorable decision, pursuant to 42 U.S.C. § 405(g).

Jones was 38 at the time of the ALJ's decision. (TR 27). He has a high school education and has worked in the past as an electrician, a combination welder, a production line welder, and as a chemical mixer. (TR 27). All previous positions require at least light exertion. (TR 27). Jones alleges that he is disabled and cannot work due to several impairments, including thoracolumbar spondylosis, status post lumbar decompression with fusion, hypertension, gout, obesity, and degenerative arthritis in the right knee with a history of some ligament and possible cartilage injury. (TR 22; Doc. 9 at 5). He suffers significant and severe pain from these impairments. (TR 25). His activities include washing dishes, walking around the yard, watching television, and playing with his dogs. (TR 25).

Although he claims onset of disability at a later date, Jones initially injured his back during an automobile accident, in March, 2002. (TR 22). An x-ray following the accident revealed mild degenerative disc narrowing. (TR 22).

Jones next received treatment from a podiatrist, Joseph R. Dupper, who saw Jones from August 2004 to October 2005. (TR 23). Jones complained of swelling and pain in his left leg and big toe joint. (TR 23). Dr. Dupper diagnosed Jones with gout. (TR 23).

In January 2004, Jones received treatment from Dr. Donald A. Deinlein, who conducted a nerve conduction study for carpel tunnel syndrome. (TR 22). Jones also had an MRI that revealed throracolumbar spondylosis and degenerative disc disease of his columbar spine. (TR 22). Jones also described a significant level of pain radiating down his leg to Dr. Deinlein, which he rated at a 10 out of a possible 10. (TR 22).

Dr. Steven Fuller treated Jones from 2004 to 2006. (TR 23). Dr. Fuller found that Jones had post lumbar decompression and fusion. (TR 23). He noted that muscle strength was 5/5 for all groups tested. (TR 23). Jones continued to report complaints of lower back pain. (TR 23).

Dr. Amit Vora, a consultive examiner, saw Jones in June of 2005. (TR 23). He noted that Jones was grossly obese and that he had uncontrolled hypertension.

(TR 23). Jones continued to report low back pain that radiated to his extremities. (TR 23). At this time he weighed 322 pounds and was 72 inches tall. (TR 23).

Jones then saw an additional consultive examiner, Dr. Vijay Jampala. (TR 23). He noted that Jones had a history of low back pain that included "significant subjective symptoms." (TR 23). Neurological examination and motor function were normal, despite his obesity. (TR 23). Dr. Jampala found that Jones could sit a total of five hours in an eight hour workday. (TR 23). He found that Jones could carry fifteen pounds frequently, and that he could frequently operate an automobile. (TR 23).

Applying this medical evidence to the relevant legal framework, the ALJ found that Jones suffered from the following severe impairments: thoracolumbar spondylosis, status post lumbar decompression with fusion, hypertension, gout, obesity, and degenerative arthritis in the right knee with a history of some ligament and possible cartilage injury. (TR 22). The ALJ found that none of the identified severe impairments equaled any of the listed impairments found in 20 C.F.R. Part 404, Subpart P, Appendix I. (TR 24).

The ALJ found that Jones had the following residual functional capacity (RFC): that he could stand for thirty minutes uninterrupted and for four hours total, that he could walk thirty minutes uninterrupted and for four hours total, and that he

could sit thirty minutes uninterrupted and for five hours total in an eight hour day. (TR 23). The ALJ also found that Jones could lift and carry fifteen pounds frequently and could balance, kneel, stoop, and crawl. (TR 23). In reaching his RFC finding, the ALJ expressly discredited Jones's pain testimony, finding that the pain level of which he complained was not supported by the medical evidence. (TR 24-25). The ALJ's RFC finding also specifically addressed Jones's obesity, finding that the limitations imposed by this impairment, even when combined with all others, did not adversely affect Jones's ability to perform, "routine movement," or to work in a sedentary work environment. (TR 26).

Following his RFC determination, the ALJ found that Jones could not perform his past work, since it all required light to medium exertion. (TR 27). However, the ALJ did find that there were several unskilled, sedentary occupations that Jones could perform that existed in both the national and the regional economy. (TR 28). Therefore, Jones was not disabled. (TR 28).

Jones sought judicial review of the Commissioner's decision in this Court by filing a Complaint. (Doc. 1). He argues that the ALJ did not adequately consider his impairments in combination with obesity and pain (Doc. 9 at 12), that the ALJ improperly found that he had not been disabled for a twelve month period at any time

between the onset of disability and the hearing date[1] (Doc. 9 at 6), and that the ALJ did not apply relevant guidelines in determining whether significant jobs that Jones could perform existed in the national economy.

## III.   STANDARD OF REVIEW

The Court's role in reviewing claims brought under the Social Security Act is a narrow one.  The scope of its review is limited to determining (1) whether there is substantial evidence in the record as a whole to support the findings of the Commissioner, and (2) whether the correct legal standards were applied. *See Richardson v. Perales*, 402 U.S. 389, 390, 401 (1971); *Wilson v. Barnhart*, 284 F.3d 1219, 1221 (11th Cir. 2002). The Court approaches the factual findings of the Commissioner with deference, but applies close scrutiny to the legal conclusions. *See Miles v. Chater*, 84 F.3d 1397, 1400 (11th Cir. 1996).  The Court may not decide facts, weigh evidence, or substitute its judgment for that of the Commissioner.  *Id.* "The substantial evidence standard permits administrative decision makers to act with considerable latitude, and 'the possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's finding from being

---

[1] This is the court's best approximation of the arguments.  Jones's arguments are admittedly difficult to follow, as many thoughts in the brief are incomplete and disorganized, and it contains scant legal authority outside of a citation as to the applicable standard of review.  (*See* Doc. 9).

supported by substantial evidence.'" *Parker v. Bowen*, 793 F.2d 1177, 1181 (11th Cir. 1986) (Gibson, J., dissenting) (quoting *Consolo v. Fed. Mar. Comm'n*, 383 U.S. 607, 620 (1966)). Indeed, even if this Court finds that the evidence preponderates against the Commissioner's decision, the Court must affirm if the decision is supported by substantial evidence. *Miles*, 84 F.3d at 1400. No decision is automatic, however, for "despite this deferential standard [for review of claims] it is imperative that the Court scrutinize the record in its entirety to determine the reasonableness of the decision reached." *Bridges v. Bowen*, 815 F.2d 622, 624 (11th Cir. 1987). Moreover, failure to apply the correct legal standards is grounds for reversal. *See Bowen v. Heckler*, 748 F.2d 629, 635 (11th Cir. 1984).

## IV. ANALYSIS

In reviewing the final decision of the Commissioner, the court is limited to determining whether the correct legal standards were applied and whether the final decision was supported by "substantial evidence." *See Lewis v. Callahan*, 125 F.3d 1436, 1429 (11th Cir. 1997).

### A.   Legal Standards Applied

The ALJ used the appropriate legal standards in deciding Jones's case. First, to qualify for benefits, a claimant must suffer from an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or

mental impairment which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 423(d)(1)(A); 42 U.S.C. § 416(I). "Physical or mental impairment" is defined by the Social Security Act as "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § 423(d)(3).

Taking guidance from the statutory definitions, the applicable regulations provide for a five-step process by which an ALJ, or in this case the Appeals Council, should evaluate the claimant's disability. *See* 20 C.F.R. §§ 404.1520, 416.920; *see also Doughty v. Apfel*, 245 F.3d 1274, 1278 (11th Cir. 2001). The first step requires a determination of whether the claimant is "doing substantial gainful activity." 20 C.F.R. §§ 404.1520(a), 416.920(a). If he is, the claimant is not disabled and the evaluation stops. *Id.* If he is not, the presiding official next considers the effect of all of her physical and mental impairments combined. *Id.* These impairments must be severe and must meet the duration requirements before a claimant will be found to be disabled. 20 C.F.R. §§ 404.1520(c), 416.920(c). The decision depends on the medical evidence in the record. If the claimant's impairments are not severe, the analysis stops. *Id.* Otherwise, the analysis continues to step three, which is a determination of whether the claimant's impairments meet or equal the severity of an

impairment listed in 20 C.F.R. part 404, Subpart P, Appendix 1. *See* 20 C.F.R. §§ 404.1520(d), 416.920(d). If the claimant's impairments fall within this category, he will be found disabled without further consideration. *Id.* If they do not, the analysis proceeds to the fourth step.

The fourth step requires determination of whether the claimant's impairments prevent him from returning to his past relevant work. 20 C.F.R. §§ 404.1520(e), 416.920(e). As to this criterion, the regulation states:

> If we cannot make a decision based on your current work activity alone, and you have a severe impairment(s), we then review your residual functional capacity and the physical and mental demands of the work you have done in the past. If you can still do this kind of work, we will find that you are not disabled.
> *Id.*

Upon determination that the claimant cannot do any of the work he has done in the past, step five requires the court to consider the claimant's residual functional capacity, as well as the claimant's age, education, and past work experience in order to determine if he can do other work. 20 C.F.R. §§ 404.1520(f), 416.920(f).

In all respects, the ALJ's decision articulated and followed the above cited legal standard. (TR 22-27). Jones makes no challenge to the legal analysis used in the Commissioner's final decision. Instead, Jones argues that the decision was not supported by substantial evidence.

B.  Substantial Evidence

"Substantial evidence must do more than create a suspicion of the existence of the fact to be established." *Wilson v. Barnhart*, 284 F.3d 1219, 1221 (per curiam). The evidence must be "relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Ingram v. Commissioner of Social Sec. Admin.*, 496 F.3d 1253, 1260 (11th Cir. 2007) (citing *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir.1983)). "Even if the evidence preponderates against the [Commissioner]'s factual findings, [the court] must affirm if the decision reached is supported by substantial evidence." *Ingram*, 496 F.3d at 1260 (11th Cir. 2007) (citing *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990). "[W]ithin this narrowly circumscribed role, [courts] do not act as automatons. [A court] must scrutinize the record as a whole to determine if the decision reached is reasonable, and supported by substantial evidence." *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir.1983) (internal quotations and citations omitted).

Jones argues that the decision was not supported by substantial evidence because the ALJ did not adequately consider his impairments "in combination with obesity and pain," (Doc. 9 at 10-12), that the ALJ improperly found that Jones had not been disabled for a twelve month period at any time between the onset of

disability and the hearing date (Doc. 9 at 6-10)[2], and that the ALJ failed to apply relevant guidelines in determining whether jobs existed in significant numbers in the national economy that Jones could perform.  For reasons discussed below, none of the arguments offered by Jones convince this Court that the ALJ's decision was not supported by substantial evidence.

        1.     <u>The ALJ adopted a reasonable interpretation of Jones's treating physician</u>.

In the section of his brief entitled "The ALJ did not adequately consider the impairments in combination with obesity and pain," Jones's argument seems to focus specifically on the ALJ's citation to treating physician Dr. Fuller in concluding that Jones will have difficulty "working with any type of physical activities requiring long standing and walking." (Doc 9 at 11); *see also* (TR 26 (quoting TR185)) (stating Dr. Fuller's opinion).  Jones argues that the ALJ "did not adequately deal with the rest of Dr. Fuller's statement." (Doc. 9 at 11).  Jones then cites to Social Security Ruling 83-10 and states that all sedentary work requires some physical activity, "<u>at least</u>" one third of the day standing or walking. (Doc. 9 at 11) (emphasis added).  Presumably, Jones's brief argues that the ALJ misconstrued Dr. Fuller's statement.

---

[2] Jones divides this part of his argument into two parts, contending that the ALJ improperly applied a January 2007 medical opinion to the entire period at issue, and that the ALJ improperly found that Jones was not disabled for any twelve month period. (Doc. 9 at 6, 8). However, since these arguments are largely the same, the court can and will address both in one section.

This argument is not convincing. The ALJ offered a reasonable interpretation of Dr. Fuller's opinion. Dr. Fuller, Jones's treating physician, noted that "[Jones] will have difficulty working with any type of physical activity or activities requiring *long* standing or walking." (emphasis added). Jones misstates the policy interpretation of SSR 83-10. In relevant part, that ruling states, "Jobs are sedentary if walking and standing are required occasionally . . . . 'Occasionally' means occurring from very little up to one-third of the time." *Id.* at 5. Jones informed this court that sedentary work required <u>at least</u> standing one-third of the time. (Doc. 9 at 11). This statement is simply incorrect. Sedentary work may require "occasional" standing, but this statement is in no way inconsistent with Dr. Fuller's statement, or the ALJ's interpretation of it. The Commissioner's decision is not due to be reversed on this ground.

        2.    <u>The ALJ did not err in failing to discuss a consultive physician's opinion</u>.

Jones next argues that the record does not support the ALJ's finding that he could not work at any period since the onset of disability. (Doc. 9 at 7, 9-10). Specifically, he argues that the ALJ did not discuss all of the relevant underlying evidence in discrediting Jones's allegations of disability due to subjective complaints of pain. (Doc. 9 at 10). The only evidence he specifically refers to is the opinion of

Dr. Vora, a consultive physician. (Doc. 9 at 10). Jones is correct in noting that the ALJ did not specifically discredit Dr. Vora's testimony. (TR 26-27).

When an ALJ discredits a claimant's pain testimony, he must offer "explicit and adequate reasons" to discredit it. *Wilson v. Barnhart*, 284 F.3d 1219, 1225 (11th Cir. 2002). Failure properly to discredit such testimony "requires, as a matter of law, that the testimony be accepted as true." *Id.* However, the ALJ need not "specifically refer to every piece of evidence in his decision," so long as the decision allows the court to find that the ALJ considered the claimant's medical condition as a whole. *Dyer v. Barnhart*, 395 F.3d 1206, 1210 (11th Cir.2005) (per curiam). The ALJ has a duty to develop the record fully and fairly. *Wilson v. Apfel*, 179 F.3d 1276, 1278 (11th Cir.1999) (per curiam). When the record is sufficient for the decision, the ALJ need not seek additional medical evidence. *Id.*

The ALJ did not err in failing to mention Dr. Vora's testimony. Dr. Vora did provide testimony that was arguably favorable to Jones's allegations of disabling pain. He noted that Jones continued to have "severe lower back pain and radiating pain in [his] lower extremities. He has undergone epidural injections without much help." (TR 141). He also noted that Jones had degenerative arthritis in his right knee joint, with a history of some ligament and possible cartilage injury. (TR 141-142). His examination revealed that Jones "could not walk on his heels as well as his

tiptoes," and that "[Jones had] presences of painful movements of both knee joints." (TR 141).

Despite the fact that the ALJ did not discredit this testimony, the court finds that the ALJ articulated specific and adequate reasons to discredit the pain testimony, and the court is satisfied that the ALJ considered the record as a whole. The ALJ relied mostly on the opinions of Dr. Jampala, a consultive physician, and Dr. Fuller, a treating physician, in reaching the decision. (TR 26). These opinions only found that Jones could not engage in occupations that involved long periods of standing. (TR 26, 145). Dr. Vora's opinion is not inconsistent with this finding. He simply did not give any opinion as to whether Jones could perform sedentary work.

The evidence offered by Jones is simply insufficient to find that the ALJ made an improper credibility finding. The court must give the opinion of a treating physician "substantial or considerable weight unless 'good cause' is shown to the contrary," *Crawford v. Commissioner Of Social Security*, 363 F.3d 1155, 1159 (11th Cir. 2004), and even assuming that Dr. Vora's opinion contradicted Dr. Fuller (which this Court does not assume), as a treating physician, Dr. Fuller's opinion would be entitled to greater weight than Dr. Vora's. *See Lewis v. Callahan*, 125 F.3d 1436, 1440 (11th Cir. 1997) ("Generally, we give more weight to opinions from your treating sources, since these sources are likely to be the medical professionals most

able to provide a detailed, longitudinal picture of your medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone or from reports of individual examinations, such as consultive examinations or brief hospitalizations."). The court is satisfied that the ALJ adequately considered all relevant medical evidence in making his decision.

      3.    <u>The ALJ did not improperly find that Jones could perform unskilled sedentary work</u>.

The ALJ found that Jones could perform several sedentary, unskilled jobs that existed in both the national and regional economy. (TR 28). He made this finding in light of an RFC determination that Jones could sit for only five hours in an eight hour day and could walk and stand for four hours each in an eight hour day. (TR 24).

In his brief, Jones directed the court's attention to Social Security Ruling 96-9p, stating that the ALJ did not adequately consider these guidelines in making his ruling. (Doc. 9 at 10). In relevant part, this policy interpretation notes:

> **Sitting**: In order to perform a full range of sedentary work, an individual must be able to remain in a seated position for approximately 6 hours of an 8-hour workday, with a morning break, a lunch period, and an afternoon break at approximately 2-hour intervals. <u>If an individual is unable to sit for a total of 6 hours in an 8-hour work day, the unskilled sedentary occupational base will be eroded. The extent of the limitation should be considered in determining whether the individual has the ability to make an adjustment to other work</u>. See Alternate sitting and standing below. The fact that an individual cannot do the sitting

> required to perform the full range of sedentary work does not necessarily mean that he or she cannot perform other work at a higher exertional level. In unusual cases, some individuals will be able to stand and walk longer than they are able to sit. If an individual is able to stand and walk for approximately 6 hours in an 8-hour workday (and meets the other requirements for light work), there may be a significant number of light jobs in the national economy that he or she can do even if there are not a significant number of sedentary jobs.
>
> **Alternate sitting and standing**: An individual may need to alternate the required sitting of sedentary work by standing (and, possibly, walking) periodically. Where this need cannot be accommodated by scheduled breaks and a lunch period, the occupational base for a full range of unskilled sedentary work will be eroded. The extent of the erosion will depend on the facts in the case record, such as the frequency of the need to alternate sitting and standing and the length of time needed to stand. <u>The RFC assessment must be specific as to the frequency of the individual's need to alternate sitting and standing</u>. It may be especially useful in these situations to consult a vocational resource in order to determine whether the individual is able to make an adjustment to other work.
> SSR 96-9p, 1996 WL 374185 at *6 -7.

As indicated by the above quotation, any finding that a claimant can sit for less than six hours in an eight hour day may significantly erode the unskilled sedentary occupational base, but the ability to adjust to this limitation by alternate sitting and standing may allow the claimant to adjust. SSR 96-9p, 1996 WL 374185 at *6-7. However, in order to permit such a finding, the ALJ must be specific as to the claimant's ability to alternate sitting and standing. *Id.* at *7.

In this instant case, the ALJ made a specific finding that is supported by the record. First, he noted that if Jones could perform a full range of sedentary work, then he was not disabled. (TR 27). He explained that Jones could not perform the full range of sedentary work, noting that "additional limitations" significantly impeded Jones's ability to perform this level of work. (TR 28). In light of this finding, ALJ asked the vocational expert to determine if significant jobs existed in the national economy, in light of Jones's RFC, education, and work experience, and the vocational expert noted that there were several jobs Jones could perform that existed in the national and regional economy. (TR 28, 116-117).

Jones's argument that the ALJ did not adequately apply these guidelines is simply without merit. The ALJ properly noted that Jones could not perform the full range of sedentary work, but consulted a vocational expert who nevertheless noted that there were still unskilled sedentary jobs that Jones could perform. That Jones does not agree with these conclusions does not mean they are not supported by substantial evidence. *See Ingram v. Commissioner of Social Sec. Admin.*, 496 F.3d 1253, 1260 (11th Cir. 2007) (noting that the court must affirm the decision of the ALJ if it is supported by substantial evidence, even if it would have reached a different conclusion).

## V.  CONCLUSION

For the reasons discussed in this Memorandum Opinion, the decision of the Commissioner is due to be **AFFIRMED**.  An Order will be entered concurrently.

**DONE** and **ORDERED**, this the 9th day of September, 2008.

**VIRGINIA EMERSON HOPKINS**
United States District Judge